MILLIKIN *vs.* MINNIS.

| 12L 539 |
| 46 284 |
| 12 539 |
| 113 41 |

APPEAL FROM THE COURT OF THE FOURTH JUDICIAL DISTRICT, FOR THE PARISH OF CONCORDIA, THE JUDGE OF THE DISTRICT PRESIDING.

In seeking for the intention of the parties to a written contract, the whole of it must be examined, and if possible, effect given to every part.

In a sale of a tract of land, described in the instrument of writing, as having certain boundaries, but making express reference to a plat of survey, " being four quarter sections as surveyed by M. L.," the reference to the plat of survey, must control the vague and indefinite description of the boundaries, in other clauses of the contract.

The titles of the parties, and not the manner of putting in possession, or the acquiescence of one in the possession of the other for a time, will control, when the pretensions set up under this possession, are wholly inconsistent with the written titles.

## 540          CASES IN THE SUPREME COURT

Parole evidence, admitted to show the act of putting in possession, in a manner manifestly erroneous and inconsistent with the written evidence of title, will be disregarded.

This is a petitory action, in which the plaintiff sues to recover a piece of land in the possession of the defendant, who insists in running his line in a diagonal direction, so as to take a hundred and eighty-five acres off the rear of the plaintiff's tract, which adjoins him immediately above, on the Mississippi river.

It is shown that in 1825, John Millikin, the plaintiff, had a pre-emption right to a section of land, adjoining his residence, on the Mississippi river, which had been surveyed and laid off into quarter sections by one Maxfield Ludlow, but the government price was not yet paid on it.

Millikin, being in the state of Mississippi, entered into an agreement with the defendant, to sell this land to him for the price of eight thousand dollars, and gave what is called a title bond, binding himself to make title to the land.

*The bond reads :* "Know all men by these presents, that I, John Millikin, of the state of Louisiana, and parish of Concordia, do acknowledge myself bound unto C. B. Minnis, of the city of Natchez, and state of Mississippi, in the sum of sixteen thousand dollars, which, truly to be paid, I bind myself, my heirs, executors, etc., firmly by these presents, sealed, etc., and dated the 1st day of January, 1825.

"The condition of the above bond is such, that whereas the above bound Millikin, has this day obligated himself to make a complete title to the said C. B. Minnis, to a certain tract of land, being and lying in the state of Louisiana, and parish of Concordia, situated on the river Mississippi, and commencing on said river, and running back through the lane now existing between the said tract and the tract claimed by the representatives of Peter Smith, deceased, and extending on the river about three quarters of a mile ; that is to say, to the fence now existing between the said Millikin and the tract of land now in the possession of William Elliot, and running on said fence, and beyond the same, containing six

hundred and forty acres, more or less, *being four quarter sections, as surveyed by Maxfield, Ludlow, etc.*

" In consideration of which the said C. B. Minnis, is to give to the said Millikin eight thousand dollars, in the following payments, etc.

" The said Minnis binds himself to pay to the United States, one dollar and twenty-five cents per acre, for the said land, whenever thereunto required by the United States, etc."

" Now, if the said Millikin shall comply with every and each of the obligations above mentioned, then this bond to be void, etc.            " JOHN MILLIKIN, *Seal.*"

The evidence shows, that in accordance with this obliga- tion, Minnis did pay the government of the United States, the price of one dollar and twenty-five cents per acre, and received patents for these four quarter sections of land, according to Ludlow's survey, and was put in possession.

Subsequently, the defendant endeavored to take advantage of. the expressions in the title bond, " *and extending on the river about three quarters of a mile ; that is to say, to the fence now-existing between* the said Millikin, *and the tract of land now in the possession of* Wm. Elliot, *and running on the said fence and beyond the same, containing six hundred and forty acres, more or less, etc.*"

By taking this fence as the line, and running on it, through to the back lines, it cut off in a diagonal line, one hundred and eighty-five acres of Millikin's land in his rear, and which was out of the four quarter sections, as surveyed by Ludlow, and patented to Minnis, by the government of the United States.

The district judge, from an examination of the evidence, came to the conclusion, that the plaintiff had not shown himself entitled to the land which he claimed, and, conse- quently, had failed to make out his case. Judgment was given for the defendant, from which the plaintiff appealed.

*M'Guire*, for the plaintiff.

1. We contend, that the first part of the description, was only to give a general· idea of where the land lay, as is

expressed by the lower line, "running back through the lane now existing, etc." This contract was not made upon examining the premises, but in the state of Mississippi; and every part of it speaks of the land as one entire thing, composed of the four lots or quarter sections, and speaks of nothing but what was contained therein, as in a sale *per aversionem*. And had there been double the quantity in those four lots that was sold, or only half the quantity specified, that alone passed by the sale.

2. The parole evidence taken to show the plaintiff put the defendant in possession according to the boundaries by which he claims, is illegal and should be disregarded. But suppose he did put him in possession; if he did it contrary to the written contract, it can have no effect, because it was done in error, unless in accordance with the contract. 1 *Martin*, *N. S.*, 456. 3 *Ibid.*, 11. 5 *Ibid.*, 238. 6 *Ibid.*, 697. 12 *Martin*, 114, 425.

3. There is no ambiguity in the written contract; it is only in the illegal testimony admitted, to vary the construction of it.

4. The contract is restrained by a general description, but is confined to the thing the parties intended to contract about; and the reference to Ludlow's plat of survey, shows plainly what it was. *Louisiana Code*, 1954, 1956.

5. If the fence described as one of the boundaries, is different from the boundary contained in the written title, it gives nothing, but must be governed by the latter. If confined to the former, it is error. 6 *Martin*, *N. S.*, 697.

6. This is not a sale *per aversionem*, for it calls for a specific number of acres, and title only passes for this amount. 4 *Louisiana Reports*, 515.

*Downs*, on the same side, insisted, that the contract between the parties should be so construed, as to give effect to every part of it; that where a party sells a certain quantity without boundary, the purchaser takes only the quantity designated; and the common intention of the parties at the time, must govern, as to the construction of the contract of

sale. 10 *Martin*, 571. 12 *Ibid.*, 114. 8 *Martin*, *N. S.*, 365. *Louisiana Code*, 1945, 1954–6. 5 *Martin*, *N. S.*, 241.

2. This is not a sale *per aversionem*, made according to boundaries fixed ; but a sale of four quarter sections of land, as delineated on a particular plat of survey. 7 *Martin*, 234.

3. Where a line commences to run in a certain direction, it will be so continued, unless there be something in the title to show the contrary. When this is the case, it does not so continue to run. 7 *Martin*, *N. S.*, 122.

4. The buyer must have his quantity ; but if his claim exceeds the intention of the parties, he must pay the difference, or take according to his written titles. 6 *Martin*, *N. S.*, 700. *Louisiana Code*, 2446, 2471, 845–48–51.

*Brent* and *Selby*, for the defendant.

1. We claim the boundary as described in the written contract, and as the defendant has been put in possession by the plaintiff himself. When the commencement of a boundary line is given, it must continue in the same direction, unless the contrary be shown. 9 *Martin*, 40. 7 *Martin*, *N. S.*, 122.

2. If the plaintiff urges, that he fixed the boundary by mistake, and is not bound by it, he takes for granted the fact, that he did fix the boundary ; and he might as well urge, that he entered into the contract by mistake, because it was in reference to the contract that he fixed the boundary.

3. Parole evidence was admissible, to explain the *latent* ambiguity that exists in this contract. 8 *Martin*, *N. S.*, 161. What did the plaintiff intend by conveying a tract of land, running from a certain point to a certain fence ? Are we not permitted to show what he meant, and what fence was intended, and the direction it runs ? In short, to explain the situation of the premises in reference to the boundaries given in the contract ?

4. When there is any doubt, the manner in which the contract was executed by one of the parties, with the consent of the other, furnishes us with the clue to the construction to be put upon it. *Louisiana Code*, 1951.

5. Judging matters by the foregoing rule, the plaintiff

WESTERN DIST.
Oct. 1838.

MILLIKIN
vs.
MINNIS.

understood it as we did. He adopted the fence mentioned in the contract, *as the line,* and put defendant in possession accordingly. He was actually present, as the parole evidence shows, when this line was marked out, with the fence as the direction.

6. It was to be supposed the plaintiff knew best what land he intended to convey; if, therefore, the doubt has arisen, in consequence of his not having explained himself intelligibly, the law construes the contract more favorably to the adverse party. *Louisiana Code,* 1953.

7. Again, it cannot·be supposed, that he only intended to convey the land contained in Ludlow's survey, or he would have stated so explicitly. If this be taken as the guide, the front line *running only to the fence,* will not reach the upper line of Ludlow's survey. The fence line crosses Ludlow's upper line *diagonally.* Is there any thing in the contract which says, that the course of the line is to be changed? Then it cannot be altered. The boundaries must govern as to quantity. 5 *Martin, N. S.,* 239. 7 *Ibid.,* 122.

*Bullard, J.,* delivered the opinion of the court.

This is a petitory action, in which the plaintiff asserts title to the south-west part of lot No. 1, in township No. 17, of range 14, east; and also, of the south-west part of lots No. 17 and 18, in township 17, range 13, east, containing about 150 acres, which, he alleges, the defendant has in possession. He exhibits as evidence of his title, patents from the United States; for the whole of the three lots above designated.

The defendant in his answer alleges, that the land claimed by the plaintiff, is his property; that in 1825, he purchased from the plaintiff, a tract of land, which embraces and includes that now sued for; and that he was duly put in possession thereof, and has ever since continued in possession. He alleges, that he holds the bond of the plaintiff, to make to him a complete title to a tract of land, of which, that in question, forms a part, and he denies that he is in possession of any land not embraced by the description in the bond.

The whole controversy, therefore, turns upon the construction we are to put upon the bond or contract entered into

between the parties, as stated in the answer. This bond
recites, that Millikin had obligated himself to make to the
defendant " a complete title to a certain tract of land, lying
and being in the state of Louisiana and parish of Concordia,
situated on the river Mississippi, and commencing on said
river, and running back through the lane now existing
between said tract and the tract claimed by the representa-
tives of Peter Smith, deceased, and extending on the river
about three quarters of a mile ; that is to say, to the fence
now existing between said Millikin, and the tract of land
now in the possession of William Elliot, and running on said
fence, and beyond the same, containing six hundred and forty
acres, more or less, being the four quarter sections as sur-
veyed by Maxfield Ludlow, etc." Minnis, the defendant,
by the same contract, engages to pay to the United States,
one dollar and a quarter per acre for the land, whenever
required, besides the price agreed on to be paid to Millikin.

The record shows, that the defendant, in pursuance of this
contract, paid the congress price, and obtained patents in his
own name for the land, as surveyed by Ludlow, being lots
Nos. 2, 3, 4, and 5, and these patents do not cover the land
in controversy.

It is manifest, therefore, that according to the written
evidence, the plaintiff shows a title of the highest dignity to
the *locus in quo*.

But, it is contended on the part of the defendant, that
according to the description in the bond, the defendant pur-
chased from the lane to the fence, and thence with the fence
and beyond it, and that by extending the line in that direc-
tion it embraces the land in controversy, and was sold by the
plaintiff to the defendant. It is further urged, that the plain-
tiff put the defendant in possession by that line, and thereby
gave a construction to the contract which supports his pre-
tensions, and that the sale was one *per aversionem*, from boun-
dary to boundary, and conveyed all the land included within
the limits described. He relies on the case of *Cuny* vs.
*Archinard.* 5 *Martin, N. S.*, 238.

In seeking for the intention of the parties to a written contract; the whole of it must be examined, and if possible, effect given to every part.

In a sale of a tract of land, described in the instrument of writing as having certain boundaries, but making express reference to a plat of survey,"being four quarter sections, as surveyed by M. L.," the reference to the plat of survey must control the vague and indefinite description of the boundaries in other clauses of the contract.

The titles of the parties, and not the manner of putting in possession, or the acquiescence of one in the possession of the other for a time, will control, when the pretensions set up under this possession are wholly inconsistent with the written titles.

Parole evidence, admitted to show the act of putting in possession, in a manner manifestly erroneous

In seeking for the intention of the parties, the whole contract must be examined, and if possible, effect given to every part. The expressions "being four quarter sections as surveyed by Maxfield Ludlow, etc." form an important part of the designation of the land conveyed, and cannot be overlooked. If there had been no other description of the land, it would have been sufficient to convey the four quarter sections, for which patents were afterwards obtained by the defendant. There is no difficulty about the lane which forms the lower line. The dispute appears to have arisen from the vague manner in which the upper boundary has been described, as running on a fence and beyond it, without saying either in what direction or to what distance. We are of opinion, that a reference in the contract to the survey of Ludlow, must control the vague and indefinite description of boundaries, in other clauses in the contract.

But the appellee relies upon article 1960, of the Louisiana Code, which declares that " when the intent of the parties is doubtful, the construction put upon 'it by the manner in which it has been executed by both or by one, with the express or implied assent of the other, furnishes a rule for its interpretation." Under this provision he contends, that Millikin, by putting his vendee in possession, according to the direction of the fence, put a construction upon this contract which concludes him. But it must not be forgotten that this is not the only act performed in execution of the contract of 1825, by the parties. The defendant, in pursuance of that contract, paid the United States for the land embraced by the survey of Ludlow, and took out his patent in conformity therewith ; and Millikin obtained patents for the adjacent lots, which embraced the locus in quo, and that those acts, and the titles which resulted from them, are wholly inconsistent with the pretensions now asserted. There is nothing in the record to satisfy us that Millikin intended to sell, or the defendant to acquire about one hundred and eighty acres, covered by the patent of Millikin, and not embraced by Ludlow's survey. The parole evidence, admitted to show the act of putting in possession in a manner manifestly erroneous

and inconsistent with the written evidence of title, cannot be regarded by this court as sufficient to destroy the plaintiff's title to the land in controversy.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed, and proceeding to render such judgment as ought, in our opinion, to have been given below; it is further adjudged and decreed, that the plaintiff recover and be quieted in his title to the tract of land claimed in his petition, and that the line beginning on the river, at an elm stump at the letter B, on the plat of survey in the record, and running south, 20° west, the whole extent of the tract, according to Ludlow's survey, be established as the boundary between the parties, and that the defendant pay the costs in both courts.