57 So.2d 211 (1952)
220 La. 633
BLANCHARD et al.
v.
NORMAN-BREAUX LUMBER CO., Inc.
No. 40223.
Supreme Court of Louisiana.
January 14, 1952.
*212 Bauer & Bauer, Franklin and Pettigrew & Duval, Houma, for defendant-appellant, Norman-Breaux Lumber Co., Inc.
Ellender & Wright, Houma, and Milling, Godchaux, Saal & Saunders, New Orleans, for appellant, Lucius W. Gilbert, called in Warranty.
Leonard Greenburg, Houma, for plaintiffs-appellees.
PONDER, Justice.
The plaintiffs brought suit against the defendant seeking to recover $13,780.51, with interest from judicial demand, as damages for the cutting and removal of cypress and tupelo gum timber from a tract of land owned by them, located in Terrebonne Parish. They allege that the defendant cut and removed the timber in moral and legal bad faith and asked for judgment for the manufactured value of the lumber produced from the timber cut and removed from their land. The defendant *213 admitted the cutting and removal of the timber but denied the trespass and, by way of defense, averred that it owned the timber and set out its chain of title to the timber. The defendant sought to call its vendors in warranty, which was denied by the district court, and the case was proceeded with to trial. On trial of the merits, the lower court held that the defendant was in both legal and moral bad faith and awarded damages to the plaintiffs in the amount of $11,920.62. The defendant appealed. On submission of the appeal, this court reversed the judgment of the lower court and remanded the case in order that the warrantors be called and for proper determination of the cause between all the parties. Blanchard v. Norman-Breaux Lumber Co., Inc., 216 La. 551, 44 So.2d 112. After the case was remanded to the lower court, an effort was made to secure service on the warrantors. The warrantors of the defendant were stockholders of a dissolved corporation and Mr. Gilbert was the only stock holder upon whom service could be had. All the other stockholders were without the jurisdiction of the court. It was stipulated and agreed that his liability and warranty would be 3% of the total liability in warranty. The case was tried and the lower court gave judgment in favor of the plaintiffs and against the defendant in the sum of $11,920.62, with legal interest from judicial demand. The court gave judgment in favor of the defendant against Gilbert in the sum of $4, with legal interest from judicial demand, and for all costs incidental to his call in warranty. The defendant and his warrantor have both appealed.
It appears that the plaintiffs own a small tract of land situated on Bayou Black in the Parish of Terrebonne. The present suit is to recover damages for the removal of cypress and tupelo gum timber from the northern or rear five arpents of the tract, containing approximately twelve acres. On May 29, 1901, Marcus M. Levy conveyed this tract of land to the plaintiffs' author in title, wherein the cypress timber on the north five arpents of the tract was reserved but no time was fixed for the cutting and removal of the timber. Plaintiffs acquired the title to the property on March 3, 1947.
On May 29, 1901, Marcus M. Levy conveyed to Dibert, Stark & Brown Cypress Company, Ltd. all the timber on the northern or rear five arpents now owned by the plaintiffs. Subsequently, the corporation was liquidated and the stockholders were deeded all the property owned by the corporation. On July 14, 1939, these stockholders conveyed to the defendant, by warranty deed, all the standing and down cypress and tupelo gum timber suitable for manufacture into lumber on a large tract of land for a consideration of $80,000, which included the northern five arpents of the plaintiffs' land. Some time in the month of April, 1947, one of the plaintiffs, Tanner, informed the defendant's superintendent, who had charge of its cutting and logging operations, that the defendant was cutting the plaintiffs' timber. The superintendent advised this plaintiff to see Mr. Breaux, secretary and treasurer of the defendant corporation. Tanner discussed the matter with Mr. Breaux, who informed him that he would have to prove his ownership in court as the defendant had bought the timber from another company. On May 9, 1947, the plaintiffs' attorney informed the defendant, by letter, that the timber rights acquired by Dibert, Stark & Brown Cypress Company, Ltd. from Marcus Levy in 1901 had been exercised on this tract of land some eight years ago when all merchantable timber was removed and the original conveyance ceased to exist. He also informed the defendant that if some agreement could not be reached it would be necessary to take legal steps to prevent any trespass or removal of timber. The president of the defendant corporation received this letter and thereafter undertook to make a check of the title to the timber. As a result of the examination, the president was informed that there was something to be said on both sides as to the title to the timber, that it was a matter difficult to determine, but the defendant's title was sufficient for the cutting and removal of the timber. The defendant proceeded to cut and remove the *214 merchantable cypress and tupelo gum timber despite the oral and written notice not to do so and this suit followed.
From our appreciation of the evidence, the defendant's right, if any, to cut the timber must be derived from the timber deed executed by Levy to its author in title, dated May 29, 1901. This timber deed was executed some 46 years prior to the time the defendant entered upon the land and removed the timber. Between the years 1901 and 1910, the defendant's author in title, Dibert, Stark & Brown Cypress Company, Ltd. dug canals in the area of this tract of land and conducted logging operations thereon. During these operations, all of the merchantable cypress timber was removed from the entire tract. The former employees and agents of this corporation, who actually cut the timber, testified that all the merchantable cypress timber was cut and removed from the land and there is no evidence in this record that any cypress trees of a commercial size were left uncut in these operations. The preponderance of the evidence shows that tupelo gum timber was not considered merchantable in the year 1901, and it was evidently not contemplated to be included in the deed. When a vendee in a timber deed has exercised the right to remove and cut all the timber purchased by him which is merchantable at the time of the purchase, the contract is terminated and he cannot thereafter go back on the land and renew cutting operations. Cooley v. Meridian Lumber Company, Ltd., 195 La. 631, 197 So. 255; American Creosote Works v. Campbell, 172 La. 866, 135 So. 659; Stanga v. Lake Superior Piling Company, 214 La. 237, 36 So.2d 778.
This rule is applicable to timber deeds where no time is specified in which the timber is to be removed. Stanga v. Lake Superior Piling Company, supra. A reading of the many opinions handed down by this court relating to the removal of timber under a timber deed discloses that where the timber has been cut generally over the entire tract of land it is deemed that the right to remove the timber has been exercised and all rights under the deed have thereby ceased.
On the same day, May 29, 1901, that the timber on this land was sold to the defendant's author in title, the fee to the land was sold to the plaintiffs' author in title wherein all the cypress timber lying beyond a distance of twenty arpents on Bayou Black was reserved. This indicates that tupelo gum was not regarded as merchantable at that time and was not intended to be included in the contract. If tupelo gum had been marketable at that time, it is hard to believe that it would not have been removed while all the equipment necessary to remove it was available. Moreover, it is strange that no effort has been made to remove tupelo gum over a period of so many years. The authorities are replete to the effect that the word "timber", in its ordinary every-day use when applied to standing trees, means such trees only as are suitable for commercial purposes. In view of our conclusion that the timber rights have been exercised generally over the entire tract of land and have long since ceased to exist, it is not necessary to cite authorities defining what the word "timber" means in timber deeds. However, see Cooley v. Meridian Lumber Company, supra.
The trial court was in error in holding the defendant in moral bad faith under the holding in the case of Kennedy v. Perry Timber Co., 219 La. 264, 52 So.2d 847, wherein it was held that where the trespasser believes himself to be the owner, but should have known from information available to him or ascertainable facts which would have placed a reasonably prudent man on notice, he is held to be in legal bad faith and not moral bad faith. The measure of damages in such case is the value of the manufactured product, less the actual expenses incurred. The ignorance of the true facts was due to the defendant's fault in failing to make proper investigation as to his title to the timber after the plaintiffs had protested. The defendant received notice through its employees and agents remonstrating against the cutting of the timber and a *215 letter of protest from plaintiffs' attorney advising it that the timber was the property of the plaintiffs and that the timber rights had been previously exercised and had long since ceased to exist. The evidence shows that the officials of the corporation, after checking into the matter, admitted that it was difficult to determine whether they owned the timber or not. In spite of these facts, the defendant continued to cut the timber, which in our opinion shows legal bad faith on their part and a lack of sufficient investigation. Especially is this true where the timber deed was executed some 46 years ago. In awarding the damages, we have arrived at the conclusion that the evidence supports the following computation, viz.: 59,300 board feet of cypress at $104.84 per thousand, $6,217.01; 74,880 board feet of tupelo gum at $76.17 per thousand, $5,703.61; total manufactured value being $11,920.62. Deducting from this amount the cost of manufacturing at $44.50 per thousand, the sum of $5,971.01, leaves a balance of $5,949.61 as the estimated damages.
The trial court was of the opinion that the warrantor was in good faith. We agree with this conclusion because he had nothing to do with the cutting of the timber and had no information or received any complaint from the plaintiffs as to the ownership of the timber. Therefore, we will not disturb the award of $4 and the cost incidental to his call for the reason that the award is properly based on the stumpage value of the timber. Kennedy v. Perry Timber Company, supra.
The warrantor contends that he and his cowarrantors are owners of the fee to the land from which the timber was removed by acquisitive prescription of ten and thirty years. The timber operations, under a timber deed, cannot be the basis of thirty years acquisitive prescription because the operations must be considered as being carried on under the timber deed and not with the view of acquiring ownership to the fee. The ten years acquisitive prescription is based on a deed, executed by Dibert, Stark & Brown Cypress Company, Ltd. to the stockholders of that corporation when the corporation was liquidated, wherein the plaintiffs' land and a large tract of land was transferred to the stockholders. This deed was executed on December 22, 1938. It is not necessary for us to pass on the question of whether the stockholders were in good faith in accepting a deed conveying the fee to the land when the corporation of which they were stockholders had only a deed to the timber. It is not necessary for us to pass on the further questions of whether the warrantor has the right to claim the ownership of the land under acquisitive prescription in these proceedings.
The warrantor claims adverse possession on the ground that dominion had been exercised over the property by executing mineral leases, trapping leases, paying taxes and by a marked line indicating its boundaries. The lower court was of the opinion that the marked line had been originally made for the timber operations under the timber deed and that the date of the remarking of it was uncertain and its position as to the boundary was also uncertain. We have examined the evidence and find this to be true. The assessment and payment of taxes and the granting of mineral leases, by the defendant, merely show an intent to possess the land as owner but does not satisfy the requisite amount of corporeal possession required to support the plea of prescription under title translative of property. Nixon v. English, 207 La. 906, 22 So.2d 266. The use of the land under the trapping leases was sporadic and of short duration, approximately 70 days of each year. The residences of the plaintiffs are located on the front portion of the property, approximately twenty appents from the swamp portions of the land on which the trapping operations were conducted, contiguous to swamp lands owned by the defendant and its ancestors in title. Such is not sufficient possession to support the plea. To acquire by prescription under a title translative of property, the title must be supported by nonclandestine, public, unequivocable possession. It must be such as to leave no doubt as to the party having *216 assumed dominion over the property. The plaintiffs and their authors in title have been in actual possession of a portion of the land over a period of many years and presently have residences on this portion of the land. Such being the case, they have legal and constructive possession of the entire tract delineated in their titles and their possession is sufficient unless another has actual possession and occupancy by enclosure or otherwise under another title. Ernest Realty Company v. Hunter Co., 189 La. 379, 179 So. 460.
Since the plaintiffs have actual possession of a portion of the property and constructive possession of the remainder of the property to the extent of their title and the evidence is not sufficient to show a notorious and open possession adverse to them, the plea must be denied.
For the reasons assigned, the judgment is amended so as to reduce the amount of damages awarded to the plaintiffs to $5,949.61, and as thus amended the judgment is affirmed. Cost of this appeal to be paid by the appellee.