127 So.2d 271 (1961)
Paul Peter BURAS
v.
UNITED GAS PIPE LINE COMPANY et al.
No. 21614.
Court of Appeal of Louisiana, Fourth Circuit.
February 20, 1961.
Rehearing Denied March 13, 1961.
Certiorari Denied April 25, 1961.
*272 Max Zelden and Sam Monk Zelden, New Orleans, for Paul Peter Buras, plaintiff, appellee-appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Ernest A. Carrere, Jr., New Orleans, for United Gas Pipe Line Co., defendant, appellee.
Chaffe, McCall, Phillips, Burke & Hopkins, New Orleans, for Louisiana Fruit Co., defendant, appellant-appellee.
Before JANVIER, REGAN and YARRUT, JJ.
YARRUT, Judge.
Plaintiff sues United Gas Pipe Line Company and the Louisiana Fruit Company, jointly and severally, for $13,500, damages for trespass upon his land in Plaquemines Parish by laying a gas transmission pipe line diagonally across his property in a trench, 50 feet wide by 10 feet deep. The amount is made up of $7,000 for loss of revenue from muskrat trapping for two years prior to the date of suit; and $6,500 for inconvenience and interference with petitioner's right of ownership.
Plaintiff alleges he acquired from one Friedman, on March 23, 1932, duly recorded:
"A certain tract or piece of land, together with all the buildings and improvements thereon and thereto belonging or appertaining, situated in the Parish of Plaquemines, State of Louisiana, on the right bank of the Mississippi River, at about 90 miles below the City of New Orleans, having and measuring one (1) arpent front on the said river by a depth of about forty (40) arpents, and being bounded on the upper side by lands belonging to Andrew Turlich, and below by lands now or formerly belonging to L. B. Buras."
*273 Alleging that, notwithstanding he was the record owner of the land, the Louisiana Fruit Company, on November 22, 1950, granted to the United Gas Pipe Line Company a servitude or right-of-way to construct the pipe line through his land. Plaintiff then prays to be recognized as owner of the land and for the damages alleged.
Defendants jointly filed exceptions of vagueness and no cause of action, in which they allege title in the Louisiana Fruit Company by purchase from William Henderson, and others who had purchased fractional interests from said Henderson, in 1898. William Henderson's primary title was created by patent from the State of Louisiana, May 11, 1894.
The exceptions were referred to the merits. Defendants answered admitting the allegations of plaintiff's petition, except his claim of title and damages; with the alternative pleas of prescription of one year under LSA-C.C. Arts. 3536, 3537, and two years under LSA-R.S. 9:5624, regarding the claim for damages.
There was judgment recognizing plaintiff's title to the disputed land, but denying him damages. Plaintiff and defendant, Louisiana Fruit Company, have appealed.
To avoid repetition, defendants will be identified herein as "Fruit Company" and "United Gas", respectively.
In 1898, the Fruit Company acquired from William Henderson, Hunt Henderson and Henry J. Leovy various properties in Plaquemines Parish, including fractional Section 7 and adjoining Sections 18 (north of Spanish Pass and south of Red Pass), 17, 19 and 20 of Township 21 South, Range 31 East. The property was swamp land, lying between the Mississippi River and West Bay, an arm of the Gulf of Mexico.
In 1932 plaintiff acquired the tract described in his petition, already stated hereinabove.
Plaintiff's acts of possession were that his house is 90 feet from the river, about eight acres from the protection levee, with a small garden, and at some unspecified time he grazed a few cows between the highway and the protection levee. In the rear of the drainage canal (too deep to be waded) and the protection levee (too high for one in the area behind it to see the house), he trapped "on occasions", "several times", but not consistently, "about a half dozen times or so", but not at all since 1941; and the casual granting of verbal permission to others to trap, and the payment of taxes in accordance with his title, carried on the Parish Assessment Rolls as measuring 1 by 40 arpents.
The Fruit Company's acts of possession were that in 1928, it granted a mineral lease, covering fractional Section 7 and adjoining Sections, to Humble Oil and Refining Company; in 1935 a right-of-way for a canal to the Venice Corporation; in 1939, a mineral lease (Section 7 and adjoining) to one Logan Bagby. Thereafter, it granted various rights-of-way, servitudes, surface leases and mineral leases, always paying the taxes on all of this property, including Section 7. It is not disputed that the area beyond the drainage canal and protection levee is swamp land.
Mr. deArmas, Civil Engineer and Parish Surveyor, when shown a copy of the instrument offered by plaintiff as the first link in his chain of title (a sale by Jean Pierre Buras to Cyprien Buras, dated February 2, 1867), with reference to the 40-arpent depth, explained that the property is described as Lot No. 1; in the second paragraph as Lot No. 2 and also Lot No. 3, all in Township 21 South, Range 31 East; and reference made to the official plat of survey of the said lands returned to the General Land Office by the Surveyor General; the lots of Sections therein conveyed form a front of 40 arpents on the Mississippi River, the whole as shown on the survey made by M. Hauke, Civil Engineer, dated November, 1866, annexed to the deed. In detail he explained that the survey:
"Shows them to be no further than the original survey by Connelly of 1836 when he surveyed all of the river *274 lots down the river towards Southwest Pass. In the first part of the deed, to clarify it, Sections 32, 33 and 34 were a separate purchase from Effingham Lawrence by Jean Pierre Buras. In Lot 2, again, he buys from Effingham Lawrence; in the section of Lot 3 he buys the whole stretch, Lot 1 on down for 40 arpents along the river, up to 1867or the act of 1866from Jean Pierre Buras to Cyprien Buras, his son. The limits of those lots were in direct accordance with the survey of J. F. Connelly, Deputy United States Surveyor, in 1836. In the first act, after this sale by Jean Pierre Buras to Cyprien Buras, Cyprien Buras' widow sells a tract of landa part of this original tractand describes it as being 40 arpents deep. Prior to that time another son who inherited land from Jean Pierre Buras, by the name of Clement Buras, sells a piece of land one arpent front by 40 arpents deep to Jack Turlich, and that act was 1888. From then on every transaction described the property as being 40 arpents deep.

* * * * * *
"There is no 40-arpent line ever located by any authority; and by order of the Governor, under the State Board of Engineers, about 1933 or 1934 I surveyed the range land between Ranges 30 and 31, which happens to be a line marking the western boundary of Section 7. That line is monumented. In other words, it is marked on the ground."
That plaintiff did not exercise sufficient possession of the property behind the drainage canal and protection levee is clear from his limited trapping. Further, he admitted he had never been to the rear line of what he claimed was his property, and that there was no method of telling when he reached this point, nor could he be sure, at all times, that he was on his property and not his neighbor's property. He admitted the property was open marsh land, with no houses, fences, signs or other indications of ownership or possession; while there were drainage ditches on either side of his property in front, they did not extend beyond the drainage canal, with no boundary lines, or marks, or anything else to indicate its extent behind the drainage canal.
Two of plaintiff's neighbors testified they trapped on the property to the rear of plaintiff's house in 1943 to 1946, in accordance with verbal permission given by the plaintiff, but could not state definitely they were on plaintiff's land, merely assumed they were.
The Fruit Company established its title to Sections 7, 18 (part), 17, 19 and 20 (as well as other property), the continuity of which is shown by Mr. deArmas' plat, and exercised ownership over portions of the property, in particular Section 17 west of Grand Pass, through various lessees who installed some physical installation on the leased area. Defendant paid taxes on all of Section 7.
In Jacobs v. Southern Advance Bag & Paper Co., 228 La. 462, 82 So.2d 765, 768, the Supreme Court reviewed the requirements for acquisitive prescription under LSA-C.C. Art. 3478, viz.:
"* * * The nature of corporeal possession sufficient to form the basis of prescription of 10 years depends on the character of the land. (Citing authorities.) What constitutes possession in any case is a question of fact, and each case depends upon its own facts. (Citing authorities.) Payment of taxes is not by itself evidence of corporeal possession of the property. (Citing authorities.) And the occasional and indiscriminate cutting of timber does not constitute possession sufficiently adverse to support the plea of prescription acquirendi causa. (Citing authorities.) The corporeal possession necessary to support the plea of prescription must include such external signs of possession as to indicate clearly that the possessor holds control and dominion over the property. *275 (Citing authorities.)" See 25 T.L.R. 424.
The assessment and payment of taxes and the granting of trapping rights may show an intent to possess the land as owner, but may not satisfy the requisite of corporeal possession required to support the 10-year plea of prescription, particularly when the use of the land under the trapping leases was sporadic and of short duration. Blanchard v. Norman-Breaux Lumber Co., 220 La. 633, 57 So.2d 211.
The rule that possession of a part of a tract of land under color of title is the possession of the whole cannot prevail over the adverse possession of the other party under a better title. Case v. Jeanerette Lumber & Shingle Co., La.App., 79 So.2d 650.
While plaintiff has valid title to that portion of the property lying between the river levee and the rear line of the river lots, he did not acquire by prescription that portion acquired by defendant under an altogether different description, of which plaintiff has admittedly not had actual possession.
It will also be remembered that no survey had ever been made of the 40-arpent line to which plaintiff claimed to have acquired a prescriptive title. In consequence, he is claiming title to a tract of land without fixed boundaries, and this he may not do under the holding of Gillard v. Glenn, 1 Rob. 159.
In the acquisition of plaintiff's ancestor in title, February 2, 1867, the property conveyed is described as measuring 1 x 40 arpents, with no metes and bounds. However, the description referred to a plan of Surveyor Maurice Hauke, dated November, 1866, attached to said act. The survey shows the property did not extend to a depth of 40 arpents, but only to the rear of the river lot or Section 4, very much less than 40 arpents, not near the location of the pipe line.
In conflict between the recital in a deed and an attached survey, the latter prevails. South La. Fair Ass'n v. Robert, 3 La.App. 505; Millikin v. Minnis, 12 La. 539; Kirkpatrick v. McMillen, 14 La. 497.
Plaintiff has failed to prove either the physical or constructive possession requisite to support a claim to a 10-year prescriptive title. Boyet v. Ferryman, 240 La. 339, 123 So.2d 79.
The judgment of the District Court is reversed, and plaintiff's suit dismissed with reference to defendant, Louisiana Fruit Company, and held to be moot as against defendant, United Gas Pipe Line Company, regarding plaintiff's claim for damages; plaintiff to pay costs in both courts.
Reversed.