316 So.2d 919 (1975)
SUCCESSION of Bolivar E. KEMP, Jr. (Batson Lumber Co., Inc., and Reimers-Schneider Co., Inc., Substituted Plaintiffs and Appellees),
v.
Helen Edwards ROBERTSON (Guy Wells, Executor of Succession of Helen Edwards Robertson, Substituted Defendant and Appellant).
No. 10265.
Court of Appeal of Louisiana, First Circuit.
June 30, 1975.
Rehearing Denied August 26, 1975.
Writ Refused October 22, 1975.
*921 J. Harrison Henderson, III, New Orleans, and Wm. McM. King, Covington, for defendant and appellant.
Henry A. Mentz, Jr., Hammond, Allen B. Pierson, Jr., Ponchatoula, for plaintiffs and appellees.
Before LANDRY, BLANCHE and YELVERTON, JJ.
LANDRY, Judge.
Defendant Guy Wells (Wells), Executor of the Estate of his aunt, Helen Edwards Robertson (Mae Edwards) appeals from judgment recognizing plaintiffs Batson Lumber Co., Inc., (Batson) and Reimers-Schneider Co., Inc. (R-S) as owners of a disputed 298.70 acre tract of land known as the Bedico Tract, situated in Headright 45, T-7-S, R-9-E, Tangipahoa Parish. The trial court held that Appellant failed to establish title to subject property by 30 years adverse possession upon finding that the possession relied upon was not exclusive possession but was precarious or mixed possession. We affirm.
This litigation originated as a possessory action brought by Menette Wilson Kemp, Widow of Bolivar E. Kemp, Jr., deceased, against Mae Edwards, on January 4, 1967. Mrs. Kemp alleged that her deceased husband acquired possession of subject lands through an unbroken chain of title originating from a Succession Sale to Bolivar E. Kemp, Sr., on November 18, 1905. Plaintiff also alleged that on October 8, and October 17, 1966, Mae Edwards disturbed plaintiff's possession by claiming ownership of the land and demanding that Bolivar E. Kemp, Jr., quit claim the land to defendant Mae Edwards.
Defendant answered denying plaintiff's possession, and filed a reconventional demand in which defendant asserted ownership of the property by virtue of thirty years adverse possession commencing in 1934. Defendant alternatively asserted a claim for caretaker's services for 33 years at $200.00 per month, or the sum of $79,200.00. Mae Edwards died before trial. Wells, nephew and sole legatee under the will of Mae Edwards, was substituted as defendant herein in said decedent's stead.
Subsequent to the filing of defendant's answer and reconventional demand, Batson and R-S joined in these proceedings as plaintiffs. As parties, Batson and R-S claim ownership of the land by virtue of conveyances dated June 16, 1972, from Olivette Garrison and Eloise Heidelberg who, in turn, acquired through the Kemps.
On the date of trial Wells moved to amend the original answer to allege adverse possession of Mae Edwards commencing in 1920 instead of 1934, as initially asserted. Upon plaintiffs objecting to said proposed amendment, the trial court offered to grant plaintiffs a continuance to meet this important new allegation. Plaintiffs elected to decline the continuance and proceed to trial.
The record discloses that Bolivar E. Kemp, Jr., and Mae Edwards were related. However the precise nature of the relationship is not made clear by the evidence. Bolivar E. Kemp, Jr., acquired a ¼ interest in subject lands from the Succession of his father, Bolivar E. Kemp, Sr., on June 25, 1934; a ¼ interest from the Estate of his mother Lallie Conner Kemp, on April 28, 1944, and the remaining ½ interest from his sister, Eleanor Kemp Ellis, on December 22, 1962. It is acknowledged that Kemp's title and also that of Batson and R-S is by unbroken chain emanating from the Successions of Robert T. Edwards and Emily N. Edwards, under date of September 2, 1905. In said Succession proceeding subject tract was sold at Sheriff's Sale pursuant to a duly issued court order to effect a partition of the land. Mae Edwards, as heir of said decedents, was cited in said Succession proceedings with process relating to said partition sale. No attack is herein made on the validity of said partition sale or upon any subsequent *922 link in the chain of title of Batson and R-S.
It is likewise acknowledged that Mae Edwards has no recorded title whatsoever and that all claims asserted through her are predicated upon alleged adverse possession of thirty years. Also conceded is the fact that since acquisition in 1905, the Kemps and their assignees have paid the taxes due each year on the property in question.
The lower court held that Mae Edwards' reconventional demand asserting ownership of the land converted plaintiff's possessory action into a petitory action. The trial court also held that since defendant converted the suit into a petitory action, defendant bore the burden of establishing title. After considering and reviewing the numerous witnesses called by the contending parties, the lower court concluded that defendant failed to establish the type of possession required by LSA-R.C.C. arts. 3499 and 3500 to support a claim of thirty years acquisitive prescription of immovables.
Wells contends the trial court erred in: (1) failing to hold that the claim of ownership by Batson and R-S converted the suit into a petitory action thereby imposing upon said plaintiffs the burden of establishing title good against the world, namely, perfect title from sovereignty, and (2) failing to find that defendant established adverse possession as required by law. In this latter regard, it is urged that the trial court erred in holding that the possession exercised by Mae Edwards was "precarious and mixed" rather than exclusive and adverse.
Relying upon Pure Oil Company v. Skinner, La., 294 So.2d 797, Wells contends that plaintiffs, having converted the suit into a petitory action, bear the burden of establishing perfect title against the world, not just a better title than defendant as possessor. The doctrine of Pure Oil Company, above, can be of no consolation to Appellant since it is Appellant who bears the primary burden of proof under the circumstances of this case.
LSA-C.C.P. Article 3657 pertinently provides as follows:
"When, except as provided in Article 3661(1)-(3), the defendant in a possessory action asserts title in himself, in the alternative or otherwise, he thereby converts the suit into a petitory action, and judicially confesses the possession of the plaintiff in the possessory action."
The foregoing codal authority plainly provides that by claiming ownership of subject property, Mae Edwards, the initial defendant in the possessory action, converted the suit into a petitory action in which defendant became plaintiff. Said claim of ownership also amounted to judicial confession of plaintiff's possession and defendant's lack of possession. Having become plaintiff in the petitory action, the burden shifted to defendant Mae Edwards, and those claiming through her, to make out title against the defendant whose possession is conceded. LSA-C.C.P. Article 3653.
The acquisitive prescription of thirty years relied upon is provided for by LSA-R.C.C. Articles 3499 and 3500 which state:
"Article 3499. The ownership of immovables is prescribed for thirty years without any need of title or possession in good faith."
"Article 3500. The possession on which this prescription is founded must be continuous and uninterrupted during all the time; it must be public and unequivocal, and under the title of owner."
The possession required by LSA-R.C.C. Article 3500 to support prescriptive title to immovables, must be continuous, open, public, peaceable, uninterrupted and adverse to the true owner. Gerrold v. *923 Barnhart, 128 La. 1099, 55 So. 688; Bedingfield v. Watson, La.App., 147 So.2d 458.
Our jurisprudence is established to the effect that possession asserted in support of a plea of thirty years acquisitive prescription must commence with actual corporeal possession coupled with intent to possess as owner. Sanders DeHart v. Continental Land & Fur Co., 205 La. 569, 17 So.2d 827.
The type of corporeal possession required to support a plea of thirty years prescription is determined in each case by the use to which the land is destined by nature. A.B.A. Exploration Gas & Oil Company, Inc. v. A. Wilbert's Sons Lumber and Shingle Company, La.App., 170 So.2d 752, and authorities therein cited.
A precarious possessor, namely, one who possesses with leave, or consent, or in the name of the true owner, cannot acquire real property by thirty years adverse prescription. LSA-R.C.C. Articles 3441, 3489, 3490, 3556(25) and 3510; Arnold v. Sun Oil Co., et al., 218 La. 50, 48 So.2d 369.
Subject tract was the Edwards family homestead at the time of its sale to Kemp, Sr., in 1905. Mae Edwards was born on the land in about 1882, and lived there with other members of her family when the place was acquired by the elder Kemp. The land consists of 300 acres of swamp and rolling timber land, the principal timber being pine. Bedico Creek runs through the tract. A small area, about three acres, was dedicated to use as an Edwards family cemetery. The old Edwards home, a rather large frame house, was situated near Bedico Creek. It appears that for a time following the sale to Kemp, Mae Edwards and certain members of her family remained on the property. On an undisclosed date following 1905, Mae Edwards left the land and remained away until 1920. Upon her return she occupied the Old Edwards home until it became uninhabitable. In about the 1940s she demolished the home and used the salvageable lumber to build a smaller house or cabin on the opposite side of Bedico Creek. She lived in the cabin until 1968 or 1969, when she was taken to a nursing home in which she died during July, 1972.
Horace Edwards, Mae's brother, also lived on the land although the date of commencement of his occupation thereof does not appear on record. He first lived alone in a cabin. Later Horace became ill or infirm and lived with his sister Mae. Horace Edwards died on the land. The date of his death is not shown.
It is conceded that Mae Edwards farmed a small plot of two or three acres adjacent to the Edwards family home. When she moved to the opposite side of Bedico Creek she also farmed an acre or two plot there. Her farming activities consisted of raising strawberries, vegetables, and pigs, some of which she sold. She also sold pine straw from the land for use in growing strawberries, until some time in about the 1940s when plastic was substituted for pine straw in the mulching of strawberry crops.
It is also undisputed that Mae Edwards posted the property, watched for fires, and evicted trespassers. She patrolled the land accompanied by her dogs and armed with a shotgun. She chased away poachers and required sportsmen, including her own relatives, to obtain her permission to hunt or fish on the land. In about 1928, she sold a small amount of gum blocks and "rollers" from the land. She occasionally sold small amounts of piling and timber. She never granted a general timber sale and never made an effort to log or sell the piling pine from the entire tract. The record contains the testimony of numerous witnesses, mostly relatives of Guy Wells, who testified that Mae constantly referred to the land as "my land". The gist of their testimony is that Mae Edwards, known as "Aunt Mae", claimed the land as owner and exercised ownership thereof in the manner indicated above. Several of these witnesses, who attested to having hunted *924 the entire property over the years, were nevertheless not aware of any signs of a general timber operation conducted on the tract by the Kemps during the 1930s.
Wells testified to his aunt's continuous possession of the land. He confirmed her trapping the property, selling pine straw and evicting hunters and trespassers, including himself. He also testified that on one occasion his aunt halted a timber operation being conducted by Bolivar Kemp, Jr. In addition, Wells attested to having purchased piling from his aunt during the period 1945 to about 1952. He stated that during this period he purchased piling which he needed to fill an order which he could not complete from other timber sources. Neither Wells nor any of the numerous witnesses called on his behalf ever knew of the land in question to be known as the Kemp property.
Numerous witnesses were called to establish possession and acts of ownership on behalf of the Kemps. Some were former employees of the Kemp family, some were relatives. In general, these witnesses testified that the land was always known as the Kemp Tract or the Kemp Property. They attested that Bolivar Kemp, Jr. made frequent visits to the land. They also stated that it was by sufferance that he let his relative "Aunt Mae" live on the land. These witnesses also stated that Bolivar Kemp, Jr., "felt sorry for Aunt Mae"; that he frequently gave her money, the amounts of which they were not sure; that he furnished the signs which she erected to post the property, and that in exchange for her acting as caretaker and watching out for fires, Kemp, Jr. let her live on the place and assisted her in whatever way he could.
Guy Garrison, husband of former owner Olivette Wilson, was a business associate of Bolivar Kemp, Jr. He testified he was familiar with subject tract since 1942. He hunted and fished on the land with Kemp, Jr. and often talked with Mae Edwards in Kemp's presence. He related that once Mae Edwards requested Kemp to cut some large trees near the cabin in which Mae lived because she feared the trees might fall on the cabin in a high wind. Garrison never heard Mae Edwards claim the land or refer to it as "my land". On one occasion he heard Mae Edwards request Kemp's assistance in the building of a boat ramp on Bedico Creek so that Mae could charge fishermen a fee for launching boats there. Garrison also attested to numerous timber operations conducted by Kemp on the land. He also stated that although Mae Edwards was fully aware of these operations she made no obligation or complaint. On the occasion of one such operation, the logs obtained were taken to a mill which Garrison and Kemp operated jointly. In essence, Garrison testified he considered Mae Edwards to be a caretaker of what he understood to be property belonging to Bolivar Kemp, Jr.
David Foster, a Kemp employee for 37 years, testified that he frequently went on the land with Bolivar Kemp, Jr., and saw Mae Edwards there on many occasions. He stated that Mae Edwards told him she was merely taking care of the land but did not say for whom. He also testified that he never knew Mae Edwards to claim the land as her own. He also stated that on two occasions he saw Bolivar Kemp, Jr., give Mae Edwards money, but he did not know the amount or the reason why the money was given.
A. J. Harrel, a former Kemp employee, testified to timber operations which he helped supervise on the land for Kemp commencing in late 1949, and extending into late 1953. During this interval, Harrel went on the land seven or eight times, cutting timber for Kemp. On one occasion, he related, Aunt Mae asked him what he was doing on the land and when he responded that he was cutting timber for Kemp, Aunt Mae made no objection. Harrel also testified that in the early 1950s he painted the boundary line of the entire tract for Kemp and that he cut timber on *925 the land between 1968 and 1971, for the then owners Mrs. Garrison and Mrs. Heidelberg.
Paul Gordon, a Batson employee, testified that in 1970 and 1971 he cut timber on the land upon instruction from Mrs. Heidelberg, who pointed out the trees she wished cut. He conducted the operation without objection or interference from Mae Edwards, whom he frequently saw on the property.
Fred Johnson, a Kemp employee from 1956 to 1970, attested to timber cutting on the land by Kemp during the period of Johnson's employment. Johnson often drove Kemp to the property. Despite numerous conversations with Mae Edwards, Johnson never heard her lay claim to ownership of the land.
M. C. Kemp testified he first cut pilings on subject property for Bolivar Kemp, Jr., in 1952. In 1954, he became a full time employee of Kemp and remained so for about 10 years. During this employment he often went on the land with Kemp and on several occasions observed Kemp give Mae Edwards undisclosed sums of money. While in Kemp's employ, M. C. Kemp cut the property several times, going on and off the property at will without any interference or objection from Mae Edwards who lived on the land in a little shack near Bedico Creek.
Manson Thompson, retired logger (unrelated to any litigant herein) testified that in the 1930s, during the bank holiday (which we judicially note to be 1933), he bought the timber on all of the subject tract from Mrs. Lallie Kemp (mother of Bolivar E. Kemp, Jr.). He recalled that he purchased the timber pursuant to a five year removal contract, for the sum of about $3,000.00, which he borrowed from a local bank. Manson testified he recalled the transaction very well because it was his first big purchase as a timber operator. He stated he immediately began cutting the land with a crew of about 10 men, including one Adam Perriloux. He also stated that during the operation he often met Mae Edwards, who lived in a cabin on the land. He further stated that at no time did Mae Edwards question his right to cut the timber or make any claim of ownership of either the land or timber.
Adam Perriloux confirmed Manson's timber operation on the entire tract during the 1930s. He stated that he worked for Manson, upon whose orders he put some tree tops in a bayou. He stated that Manson removed the tree tops from the streams when a complaint was lodged by Mae Edwards. Perriloux also testified that he was 66 years of age and all of his life understood that subject land was Kemp property.
In view of the evidence of record, we readily concur in the trial court's determination that such possession as was exercised by Mae Edwards over the land in dispute, was not exclusive as required by LA-R.C.C. Articles 3499 and 3500. We also concur in the finding that the possession of Mae Edwards was precarious or mixed and consequently insufficient to support a plea of thirty years acquisitive prescription of immovables.
Assuming, solely for argument's sake, the possession of Mae Edwards was exclusive, it is clear beyond doubt that the general cutting of the entire tract by Manson Thompson, in about 1933, pursuant to a 5 year timber purchase from a former owner, effectively interrupted said possession. It is also clear that since said interruption, defendants have failed to establish thirty years continuous possession by Mae Edwards.
The judgment of the trial court is affirmed, all costs of this appeal to be paid by defendant Helen Edwards Robertson, Guy Wells, Executor of the Succession of Helen Edwards Robertson.
Affirmed.