SAVOIE, Judge,
dissenting.
I respectfully dissent from the majority opinion. I find that the trial court was correct in placing the burden of proof on the Landrys and in finding that the Lan-drys did not carry the burden of proving thirty year acquisitive prescription.
BURDEN OF PROOF
Under the provisions of LSA-C.C.P. art. 3654 the first issue that must be determined is the question of current possession. Possession determines who has the burden of proof. When one party claims possession of one year to the exclusion of the other party and the court finds as a matter of fact that one party had possession for one year, the second party pleads his title, then the burden shifts to the one pleading title to make out his title good against the world. LSA-C.C.P. art. 3654(1). A deciding factor as to possession of one year is that the possession must be one year from the date that the claimant under title acquired knowledge of the possession. See Yiannopoulos, Work of the Appellate Courts 1973-74 — Property, 35 LA.L.REV. 266, 277 (1975).
If we assume that Mr. Landry proved his possession of one year from the date the Chustzs had knowledge thereof then the burden of proof shifted to the Chustzs to “make out their title” good against the world. This can be done in a number of ways including title back to the sovereign or to a common ancestor or, through acquisitive prescription of ten or thirty years. Yiannopoulos points out that if there is a break in the owner’s chain, this does not prevent him from asserting ownership by acquisitive prescription of ten or thirty years. Id. Literal application of Article 3654(1) precludes recovery from an adverse possessor only in cases in which the other party is not the true owner. Id. at 278. The Chustzs traced their title from an act of sale dated February 15, 1881 and had possession under title to the property from that date until December 27, 1940, which is the earliest date the Landrys claim possession of the property. The Chustzs therefore, had title to and possession of the land in dispute for a period of almost sixty years. It is clear from the record that the Chustzs and their predecessors in title possessed at least part of the land called for by their title. Therefore, under the provision of Article 3426 of the Civil Code, the Chustzs are deemed to have constructive possession of all the land covered by their title. Equally important is the fact that the Landrys do not dispute the Chustzs possession prior to 1940. Therefore, when the trial court held that the Chustzs had proven good title and then transferred the burden of proof to the Landrys to prove title by thirty year acquisitive prescription, the trial court was correct. This apparently was in the majority’s mind because it went to great lengths to explain that the Landrys had good and valid thirty year prescriptive title. Had it not been convinced of the validity of the Chustzs’ title, there would have been no need to go any further.
In summary, Mr. Landry’s initial burden was to prove exclusive possession of one year. The burden then shifted to the Chustzs to make out their title. Having done that the burden then shifted back to Mr. Landry to prove acquisitive prescription of thirty years. LSA-C.C.P. art. 3654.
THIRTY YEAR PRESCRIPTION
Plaintiffs’ claim of acquisitive prescription by thirty years possession without title is based on LSA-C.C.P. articles 3486, 3487 and 3488. Judge Lanier of this Honorable Court provided a good summary of the basic principles of thirty year acquisitive prescription in General American Oil Co. of Texas v. Williams, Inc., 441 So.2d 1268, 1270 (La.App. 1st Cir.1983), writ. denied, 445 So.2d 1230 (La.1984):
The ownership of immovable property may be acquired by the prescription of thirty years, even in the absence of title *867 or good faith possession. La.C.C. art. 3499. The possession necessary for this prescription must be continuous, uninterrupted, public, unequivocal and with the intent to be owner. La.C.C. art. 3500; Succession of Kemp v. Robertson, 316 So.2d 919 (La.App. 1st Cir.1975), writ, denied, 320 So.2d 906 (La.1975). The prescriptive title of thirty years extends only to the property actually possessed by the person pleading it, and what is sufficient possession is determined by the nature of the property. La.C.C. art. 3503; A. Yiannopoulos, Louisiana Civil Law Property, § 212 in 2 Louisiana Civil Law Treatise, 567 (2d ed. 1980). A person claiming this prescription must demonstrate his possession by some external and public sign sufficient to give notice to the public of the character and extent of the possession. Suire v. Primeaux, 363 So.2d 963 (La.App. 3rd Cir.1978), writ, denied, 365 So.2d 243 (La.1978). The burden of proving the facts essential to support a plea of thirty year acquisitive prescription rests on the party making the plea. Briggs v. Pellerin, 428 So.2d 1087 (La.App. 1st Cir.1983); Levatino v. Williams, 396 So.2d 380 (La.App. 1st Cir.1981). (Footnotes omitted).
Particularly applicable to this case are the corollary principles summarized in the recent leading case of City of New Orleans v. New Orleans Canal, Inc., 412 So.2d 975, 981 (La.1982):
Further, where an individual claims by corporeal detention alone and without title, he must show an adverse possession within enclosures. Norton v. Addie, 337 So.2d 432 (La.1976). See also 2 Civil Law Treatise (2 Ed. Sec. 212). ‘Enclosed’ does not necessarily mean ‘fenced in’, but does require ‘that the land actually, physically and corporeally possessed by one as owner must be established with certainty, where by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof.’ Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952). The corporeal possession required to institute a possessory action corresponds with the possession necessary for acquisitive prescription of thirty years. Norton v. Addie, supra; Liner v. Louisiana Land & Exploration Co., supra. Consequently, the possession must be open, continuous, public, unequivocal and uninterrupted with the intent to possess as owner. Succession of Kemp v. Robertson, 316 So.2d 919 (La.App., 1975), writ den., 320 So.2d 906. The intent to possess as owner cannot be inferred when the circumstances are insufficient to give reasonable notice to the public and the owner of the property that the possessor is unequivocally possessing as owner. Woodell v. Roberts, 329 So.2d 858 (La. App.1976), writ ref, 333 So.2d 248 [La. 1976].
These principles are also set forth in the Civil Code:
Art. 3435. Vices of possession Possession that is violent, clandestine, discontinuous, or equivocal has no legal effect.
Art. 3436. Violent, clandestine, discontinuous, and equivocal possession
Possession is clandestine when it is not open or public, discontinuous when it is not exercised at regular intervals, and equivocal when there is ambiguity as to the intent of the possessor to own the thing.
The applicability of the above principles to cases such as this one is discussed in La Caze v. Boycher, 80 So.2d 583, 588 (La. App. 1st Cir.1955):
But we might further add that the possession should be open and notorious enough to enable the owner to know of a claim adverse to his so that he may take steps to protect his right to the property. ‘In short, the rule is that there must be such external signs of possession to indicate clearly that the possessor holds control and dominion over the property.’ Martel v. Hunt, 195 La. 701, 197 So. 402, at page 407 [1940]. Thus, a mere survey of boundary lines where they are not plainly and permanently marked does not *868 constitute open and apparent possession, Albert Hanson Lumber Co. v. Baldwin Lumber Co., 126 La. 347, 52 So. 537 [1910], Pierson v. Shepherd, 6 La.App. 333 [1927]. See also Blanchard v. Norman-Breaux Lumber Co., 220 La. 633, 57 So.2d 211 [1952].
See also Alford v. Jarrell, 471 So.2d 970 (La.App. 1st Cir.1985).
In applying these basic principles, the trial judge considered the totality of the evidence presented by plaintiffs. The principal activities of Mr. Landry over this tract were sporadic, equivocal and insubstantial. Hunting, picking pecans and the grazing of cattle belonging to many owners, even on a regular basis, are certainly equivocal activities in this isolated area. Mr. Landry never posted the land. These weak possessory activities failed to give the Chustzes’ effective notice that Mr. Landry might be quietly building a claim of acquisitive prescription.
The majority is attempting to substitute its evaluations, inferences and credibility calls for those of the trial court. It may do so if the trial court is clearly erroneous, however, here it is not. For instance, the majority refers to the fact that Mr. Landry farmed the property, yet the record reflects that Mr. Landry farmed part of the island for only one year and that this occurred within two years after his purchase of the adjacent property in 1940. Mr. Landry actually purchased a small portion of the island (according to the Mundinger survey) and it is that portion of the island that was farmed. The record reflects that the fence line on the island which ran north and south, approximated the Mundinger survey line and it was only on Mr. Landry’s side of that line that he attempted his farming operations. This farming operation took place in either 1941 or at the latest 1942 and was never repeated.
An adverse possessor without title must possess inch by inch, foot by foot; this being the case Mr. Landry’s acts of possession by his farming would extend only to the Mundinger survey line. As to the grazing of cattle on the island, the trial court found that numerous people allowed their cattle to graze on the land. There is conflicting testimony concerning the grazing of cattle, this once again was a credibility call which was properly made by the trial court.
The record does not support a claim of adverse possession for a period of thirty years. The picking of pecans under wild pecan trees does not support such a claim. The alleged planting of winter grass might be a factor in favor of Mr. Landry except that a careful reading of the Landry testimony[1] reflects that the grass was there and that they assume that their father planted it. Likewise the Landry sons testified that their father sold timber off the property but, a careful reading of their testimony reflects that this was pure speculation on their part. They knew of no actual sale by their father, to whom timber was sold, for how much it was sold or when the timber was to be harvested. Their testimony reveals only that there were some trees cut on the island by persons unknown at the request of persons unknown and for purposes unknown.
The majority states that Mr. Landry continuously maintained the earthen dikes which provided access to the island. While Mr. Landry did maintain to some extent one of the earthen dikes he did not maintain both of them. The majority states that the Landry children began harvesting pecans as a cash crop. Children picking pecans under wild pecan trees is not an act of possession. The majority states Mr. Landry “stored” his mules on the disputed tract at various times during the years before he purchased tractors. The Landry testimony is simply that the mules were free to go on the island. The majority states that Mr. Landry immediately began grazing the cattle on the disputed area. The trial court found that while there were cattle on the disputed area, those cattle belonged to various individuals, not just *869 Mr. Landry. The statement that the Landry family hunted on thé property and occasionally used the island as a dump site for construction work overlooks the fact that almost everybody who testified hunted on the property and that dumping garbage is not necessarily an act of possession. The majority states Mr. Landry maintained all fences which bordered his undisputed tract. Does the majority mean that he maintained fences on an area that is not in dispute? This indicates to me that he fenced his own land apart from the land he is claiming. The majority states that Mr. Landry occasionally cut trees for use as firewood; occasional acts will not support acquisitive prescription. The majority states that the trial court did not believe these acts were sufficient to maintain a claim of thirty years acquisitive prescription, and that it disagrees. However, what the trial court actually stated was that it did not believe the testimony of the Landry witnesses and that it did believe the testimony of the Chustz witnesses and thus, it found for the Chustzs. Finally, the majority states that Mr. Landry had a gate which barred entry to the disputed tract from the time Mr. Landry moved onto the property and that there was no access from any other property except that of Mr. Landry’s. This proves nothing. Mr. Landry did put a gate on his own property. This is not in dispute; however, Mr. Landry did not testify as to the reason for the gate. Furthermore, it is possible to own land where one has no direct access. Such land is an enclosed estate. It is not necessary that one have access to his land for him to be recognized as owner.
The law is clear that if a party has a title, civil possession is sufficient to maintain possession. If he has no title his possession must be within enclosures. Furthermore if the party has title his possession of a part of the tract maintains his possession of the whole. Whereas, if the party has no title, his possession only extends to the limits of his actual possession. Under the facts of this case Mr. Landry has not proven prescriptive title beyond the Mundinger line.
For the above and foregoing reasons, I dissent.

. The trial court in its written reasons for judgment noted that Mr. Edmond J. Landry, Sr. did not testify, however, his children did testify. The trial court stated that "Mr. Landry, Sr. was present in Court throughout the trial and he appeared to be alert and attentive."