471 So.2d 970 (1985)
Patrick W. ALFORD
v.
Robert JARRELL, et ux.
No. 84 CA 0553.
Court of Appeal of Louisiana, First Circuit.
June 25, 1985.
*971 L.B. Ponder, Jr., Amite, for plaintiff-appellant.
Evelyn Scott, Ponchatoula, for defendant-appellee.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SHORTESS, Judge.
Patrick Alford (plaintiff) filed suit against Robert and Leslie Leigh Mottinger Jarrell (defendants) seeking a declaratory judgment restoring plaintiff to possession and ownership of a disputed piece of property he claimed to have fenced in excess of 30 years and damages of $18,444.88 for illegal trespass, replacement of his old fence and corner posts, mental anguish, and inconvenience. In the alternative, if the court would not restore his possession and ownership of the disputed property, he sought to have the boundary set according to his survey.
The trial judge rendered judgment in favor of defendants, determining the actual boundary line by title to be the section line between the Alford and Jarrell properties, not following the meandering creek as plaintiff claimed. The judge also concluded that plaintiff failed to prove that he had acquired the disputed area by acquisitive prescription of 30 years, summarizing the key evidentiary issues as follows:
Plaintiff acquired his tract of land from his father, A.G. Alford, by act of sale dated July 14, 1969, and by act of correction dated July 2, 1980. This tract of land was acquired by A.G. Alford from H.R. McElveen November 23, 1938. In the sale from McElveen to Alford the southern boundary of that property must necessarily be the section line because the description reads by quarter sections.
The defendants, Robert Jarrell and Leslie Leigh Mottinger Jarrell, acquired their property from Amite Milling Company on November 6, 1981. Amite Milling Company acquired the said property from Lay Ruth Alford by sheriff's sale.
The dispute herein arises over the boundary on the southern side of plaintiff's property and the northern side of defendants' property. The plaintiff claims that the fence which was removed by defendants is the boundary between the properties while the defendants claim that the fence has not been there 30 years and that the actual boundary is the section line which separates the properties.
Both parties produced surveys which each claims supports their point of view. Plaintiff introduced two maps by W.R. Engineering. The first map was annexed to the petition and forms a basis of that petition. The second map showing an old fence in more detail was offered into evidence at trial. Defendants introduced a survey map of Lowell E. Cummings which shows the defendant's 60.68 acre tract and also the adjoining property owners to the North which include Union Church Cemetery, L.B. Ponder, Jr., Barbara C. Levert, and plaintiff, Patrick W. Alford. Although defendants were not able to offer the testimony of Lowell E. Cummings at trial due to Mr. Cummings recent operation and [recuperation], they did offer the testimony of John Cummings, who was the crew chief in the field, who took the field notes for this survey and actually drew the survey map which was then approved by Mr. Cummings. Each survey uses a different point of beginning. The point of beginning used on the Cummings survey is the U.S. Government Section Corner between Sections 1, T2S, R8E, Section 12, T2S, R8E, Sec[t]ion 6, T2S, R9E, and Section 7, T2S, R9E, all in Tangipahoa Parish, Louisiana. This point is the Northwest corner of the Robert Jarrell property.
The defendants offered testimony of several persons which indicated that there was in addition to the old fence which plaintiff claims is the boundary, evidence of an older fence on the section line where the new fence is now located. This testimony is substantiated by the Cummings survey which shows 1) the new fence, 2) the old fence which plaintiff maintains is the boundary and 3) the *972 evidence of an older fence on the section line. Plaintiff's title (deed from McElveen to Alford) indicates that the southern boundary of the property is the section line as are the boundaries of the other properties along this line. Testimony further substantiates the Cummings survey in that several witnesses testified that the new fence erected by the defendants was in a straight line across the northern margin of defendant's property and that no other complaints had been received from any of the other adjoining property owners as to the positioning of the fence.
. . . . .
Plaintiff testified that the fence had been there for as long as he could reme[m]ber it and produced two other witnes[s]es that testified the fence had been there for thirty years. However, the court was particularly impressed with the testimony of defendants' expert witness in the field of forestry. The fence which plaintiff claims as boundary was mainly constructed by tacking barbed wire in a random pattern from tree to tree. Defendants and a county agent selected certain trees from this fence line. The selection was made by the county agent choosing those trees which looked to be most average by the age and appearance of the wire. Cross sections of these trees were then cut and retained in the possession of the county agent until trial. At trial these cross sections were presented to defendants' forestry expert, Mr. Donald Smith, for examination. Mr. Smith testified that he could correctly determine how long the wire had been tacked or nailed to the tree by the growth rings of the tree. Mr. Smith testified that the wire had been placed on the tree between 10 and 14 years ago and that the trees themselves were both 33 years old.
The Court was further impressed with testimony by several witnesses for the defendant which indicated that the fence was not maint[a]ined and that in fact, plaintiff's [cattle] roamed through the fence and onto defendants' property. Plaintiff produced no other evidence of acquisitive prescription such as taxes paid or crops grown on this property. Considering the evidence mentioned above, leads the Court to believe that plaintiff's witnesses may have been mistaken as to the location of the old fence and the period of time in which the fence was in any one location.
Plaintiff appealed, alleging the following legal and factual errors, based on the trial court's refusal:
(1) to apply LSA-C.C. 2291 to defendants' admissions of forceful entry, seizure and trespass and to impose liability upon defendants for those actions;
(2) to grant a declaratory judgment restoring plaintiff's possession of the disputed land; and
(3) to award plaintiff injunctive protection and damages.
Plaintiff's petition based this claim on both his and his father's ownership by title and possession for a combined total of 44 years prior to defendants' disturbance and prayed for restoration of the disputed property to him as owner and possessor. When ownership is presented in a declaratory judgment action, "the court shall render judgment in favor of the party:
(1) Who would be entitled to the possession of the immovable property or real right therein in a possessory action, unless the adverse party proves that he has acquired ownership from a previous owner or by acquisitive prescription; or
(2) Who proves better title to the immovable property or real right therein, when neither party would be entitled to the possession of the immovable property or real right therein in a possessory action.
LSA-C.C.P. art. 3654.
Since plaintiffs' deed describes his property as being "All in Township 2 South, Range 9 East," it does not include the disputed land south of the section line, and the trial judge correctly placed the boundary line by deed at the section line. Thus, plaintiff's ownership of the strip in dispute must rest on the *973 remaining issue: a claim of 30 years acquisitive prescription.
Plaintiff's and defendants' versions of the facts differ considerably. Plaintiff was born and raised on the land purchased from his father. He claimed that the destroyed fence had existed in the same location without controversy for over 30 years. He admitted, however, he had never measured the disputed area since the old fence followed a little meandering creek and surrounding low areas. His survey indicated the new fence was built about 25 feet north of the closest point of the old fence for a distance of under 1200 feet. When plaintiff discovered defendants' trespass, they had completed about half of the new fence and refused to comply with his request to leave the area.
With the exception of both surveyors, the county agent and the forestry expert, all of the witnesses were either related to or friends of either plaintiff or defendants and testified contradictorily about their personal knowledge of plaintiff's possession. There was even disagreement about the number of fences involved. Plaintiff mentioned two fences: (1) the old one built south of and parallel to the section line until it zigzagged at the creek, and (2) the new fence. Defendants found evidence of three fences: (1) one is tacked from tree to tree, which plaintiff claims as boundary, but defendants say is located on their property; (2) another is the old fence discovered on or near the section line, running in a straight line between the parties' properties, and (3) the third is the new fence constructed by defendants on the section line, according to Lowell Cummings survey and in line with neighboring properties also having the section line between Sections 6 and 7 as their southern boundaries.
What constitutes possession in any case depends on the nature of the property and is a question of fact, with each case depending upon its own facts. Liner v. Louisiana Land and Exploration Co., 319 So.2d 766, 772 (La.1975) O'Quinn v. Haas Investment Company, Inc., 458 So.2d 612, 614 (La.App. 3rd Cir. 1984); and Bossier v. Shell Oil Company, 430 So.2d 771, 774 (La.App. 5th Cir.1983). Further, where a plaintiff claims only by corporeal detention, without title, he must show an adverse possession within enclosures. An enclosure does not require a fence, but does require that the land possessed as owner be established with certainty, either by natural or artificial marks sufficient to give definite notice to the world the character and extent of the possession, its full identity and its certain boundaries. Possession must be open, continuous, public, unequivocal and uninterrupted. LSA-C.C. art. 3435; O'Quinn, 458 So.2d at 614.
The trial court correctly resolved the factual issue of possession in favor of defendants. The burden of proof was on the plaintiff. The trial court determined that the weight of the evidence showed that plaintiff's witnesses may have been mistaken about the location of the old fence. For example, Ruth Alford, plaintiff's witness and former neighbor and defendants' predecessor in title, could not remember when she had owned her property prior to losing it at sheriff's sale or whether the old fence was supposed to be on the property line. Although she said the old fence zigzagged at one end, when defendants' attorney showed her a map, she pointed to the old fence defendant claimed was the boundaryon the section line. Although Ruth Alford denied testimony by defendants' witnesses that she had previously told them the fence was only 12 years old or that plaintiff had asked her to help replace that fence 12 years ago, that 12-year age estimate was more in line with forester Donald J. Smith's testimony that the two tree cross-sections he examined showed the maximum age of old fence wire to be between 10 and 14 years.
Plaintiff failed to prove with certainty that his possession was open, continuous or unequivocal or the exact location of the boundary. Even if plaintiff proved the requisites of the possessory action in LSA-C.C.P. art. 3658, under LSA-C.C.P. art. 3654, the trial court cannot maintain plaintiff's *974 possessory claims if the defendants, as here, prove they acquired ownership from a previous owner. It is well settled that in the absence of an abuse of discretion or manifest error, the conclusions of the trier of fact are accorded great weight on appellate review, and will not be disturbed. Canter v. Koehring Co., 283 So.2d 716 (La.1973). We have found no manifest error.
Accordingly, the decision of the trial court is affirmed at plaintiff's costs.
AFFIRMED.