# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# NUMBER 2020 CA 0915

## GERALD WAYNE MIZELL AND PAMELA MIZELL HELTON

### VERSUS

## BOBBY JOE WILLIS AND JAMES E. WILLIS

Judgment Rendered: **JUL 2 9 2021**

Appealed from the
Twenty-Second Judicial District Court
In and for the Parish of Washington
State of Louisiana
Docket Number 110744, Division "I"

Honorable Reginald T. Badeaux, III, Judge Presiding

\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Bryan A. Harris<br>Bogalusa, LA | Counsel for Plaintiffs/Appellees,<br>Gerald Wayne Mizell and<br>Pamela Mizell Helton |
| Richard W. Watts<br>Franklinton, LA | Counsel for Defendants/Appellants,<br>Bobby Joe Willis and<br>James E. Willis |

\*\*\*\*\*\*\*\*\*\*\*\*\*

BEFORE: WHIPPLE, C.J., McDONALD, McCLENDON,
WELCH, AND CHUTZ, JJ.

**WHIPPLE, C.J.**

This matter is before us on appeal by defendants, Bobby Joe Willis and James E. Willis, from a judgment of the trial court dismissing their reconventional and third-party demands against Gerald Wayne Mizell, Pamela Mizell Helton, Charles Guy Blackwell, and Lydia D. Blackwell.[1] For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

Gerald Wayne Mizell and Pamela Mizell Helton (the Mizells),[2] and Bobby Joe Willis and James E. Willis (the Willis brothers) own adjoining tracts of land in Washington Parish. Additionally, the Willis brothers and the Mizells co-owned a 33.70 acre tract of land, with Charles Blackwell owning a five-acre tract of land in the northwest corner of the Mizell tract. A gravel road runs in a north/south direction near the western edge of the Mizell and Willis tracts of land. The Willis brothers allege that, for over thirty years, they have used the road to access their property. However, a dispute arose between the parties in November 2016, when a fence was erected across the road and blocked the Willis brothers from using the road.

On May 16, 2017, the Mizells filed suit against the Willis brothers, seeking a partition in kind of the property they co-owned with the Willis brothers. The Willis brothers filed an answer and a reconventional demand against the Mizells, as well as a third-party demand against Charles Guy Blackwell and Lylia D. Blackwell (the Blackwells),[3] seeking restoration of their right of passage along the

---

[1]The underlying suit, a petition for partition in kind of a tract of land measuring approximately thirty-three acres, filed by the Mizells, was settled prior to the trial of this matter. The parties reached an agreement as to a partition of the property, where the Willis brothers were granted ownership of seven acres of land.

[2]The Mizells' ancestor in title is their father, Billy Ray Mizell, who died in 2016.

[3]Johnny L. Willis was mistakenly named as a plaintiff in the reconventional demand and was dismissed from the suit at the commencement of trial.

road. The Willis brothers alleged that they had "consistently maintained" the road and "used [it] on a daily basis" until the fence was constructed in November 2016. They further asserted that the road had been in existence for well over thirty years, was used by their ancestors in title, and was at one time maintained by the governing body of Washington Parish.

The matter proceeded to a bench trial on August 16, 2018. At the trial, various documents were admitted into evidence, and several witnesses testified regarding the road in question. At the conclusion of the trial, the trial court took the matter under advisement. On October 24, 2018, the trial court issued written reasons for judgment, concluding that the Willis brothers failed to meet their burden of proof under LSA-R.S. 48:491 because the work done to the road by the parish did not rise to the requisite level of maintenance to support a tacit dedication of the road pursuant to LSA-R.S. 48:491(B)(1)(a). On October 24, 2018, the trial court signed a judgment in accordance with its reasons.

On December 4, 2018, the Willis brothers appealed the trial court's judgment. This court, *ex proprio motu*, issued a show cause order on July 24, 2019, on the grounds that the judgment on appeal was ambiguous because this court was unable to determine what relief was granted to which parties. See Mizell v. Willis, 2019-0141 (La. App. 1st Cir. 11/15/19), 290 So. 3d 247, 249. After both sides filed briefs in response to this order, this court found that the judgment lacked sufficient decretal language; therefore, the judgment was not a final, appealable judgment. Accordingly, this court dismissed the appeal for lack of appellate jurisdiction. Mizell, 290 So. 3d at 250.

After the prior appeal was dismissed, the Willis brothers filed a rule to show cause why the October 24, 2018, judgment should not be amended. After a hearing on the matter, the trial court signed an amended judgment on January 16,

3

2020. The Willis brothers then filed the instant appeal, assigning the following as error:

1. The trial court erred in finding the road was not a publicly maintained road in accordance with LSA-R.S. 48:491.

2. Even if the road was not a publicly maintained road, the trial court erred in failing to find that the Willis brothers and their ancestors in title acquired a servitude of passage through acquisitive prescription due to their constant, undisturbed use of the road for over thirty years.

## DISCUSSION

### Assignment of Error #1

In their first assignment of error, the Willis brothers contend that the trial court erred in finding that the road was not a publicly maintained road in accordance with LSA-R.S. 48:491.

The formation of a public road may occur via tacit dedication under LSA-R.S. 48:491(B)(1)(a), which provides, in pertinent part:

> All roads and streets in this state which have been or hereafter are kept up, maintained, or worked for a period of three years by the authority of a parish governing authority within its parish, or by the authority of a municipal governing authority within its municipality, shall be public roads or streets, as the case may be, if there is actual or constructive knowledge of such work by adjoining landowners exercising reasonable concern over their property.

Actual or constructive knowledge is presumed if the public body performing the work notifies the last known adjoining landowners of the maintenance by written notice sent by certified or registered mail, return receipt requested. LSA-R.S. 48:491(B)(1)(b). However, actual or constructive knowledge is conclusively presumed if the total period of the maintenance is for a period of four or more years, unless prescription is otherwise interrupted or suspended. LSA-R.S. 48:491(B)(1)(c).

4

A two-pronged burden of proof exists under LSA-R.S. 48:491(B)(1)(a). First, it must be shown that there has been sufficient maintenance; second, it must be shown that the landowner had knowledge of or acquiesced in the public maintenance. Moret v. Williams, 582 So. 2d 975, 977 (La. App. 1st Cir. 1991). Tacit dedication does not require intent of the landowner to dedicate the property when there has been sufficient maintenance without protest. Himel v. Bourque, 2014-1811 (La. App. 1st Cir. 12/11/15), 185 So. 3d 42, 47. The underlying rationale of LSA-R.S. 48:491 is protection of the public fisc, guarding against the use of public monies for the benefit of private landowners. Moret, 582 So. 2d at 977. Thus, if landowners accept public maintenance of the road upon which they live without protest, then they cannot protest the characterization of that road as public. Himel, 185 So. 3d at 47.

An occasional "brushing up" or "token maintenance" of private property is not sufficient to invoke the provisions of LSA-R.S. 48:491 and establish a tacit dedication of a servitude of passage. IP Timberlands Operating Co. v. De Soto Par. Police Jury, 552 So. 2d 605, 607 (La. App. 2nd Cir. 1989); Guzzardo v. Campo, 486 So. 2d 912, 914 (La. App. 1st Cir.), writ denied, 488 So. 2d 1026 (La. 1986). The question of sufficient public maintenance is one of degree. The issue of whether public maintenance is sufficient to support a tacit dedication is an issue of fact that is squarely within the purview of the trial court. Guzzardo, 486 So. 2d at 914. It is well-settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So. 2d 840, 844 (La. 1989).

5

Under the manifest error standard of review, a reviewing court may not merely decide if it would have found the facts of the case differently. Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC, 2014-2592 (La. 12/8/15), 193 So. 3d 1110, 1115. Rather, this court employs a two-part test for the review of a factfinder's determinations. Stobart v. State through Dept. of Transp. and Development, 617 So. 2d 880, 882 (La. 1993). To reverse a trial court's factual conclusions, the appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusion, and the finding must be clearly wrong. Walton v. State Farm Mut. Auto. Ins. Co., 2018-1510 (La. App. 1st Cir. 5/31/19), 277 So. 3d 1193, 1196. This test requires a reviewing court to review the record in its entirety to determine manifest error. Stobart, 617 So. 2d at 882.

In the instant case, the trial court found that the Willis brothers had failed to carry their burden of proving that the road had been tacitly dedicated pursuant to LSA-R.S. 48:491(B)(1)(a). In so concluding, the trial court made specific factual findings that the work done to the road did not rise to the level of maintenance required under LSA-R.S. 48:491 and also that the evidence did not support that any work done was performed by the authority of the municipal governing authority.

It is undisputed that the road is a gravel road that runs from Louisiana Highway 1074 through the Mizell property, and to the land owned by the Willis brothers. Regarding maintenance performed on the road, James Howard Stewart, a member of the Washington Parish Police Jury from 1976-1980, responded affirmatively when asked if, during his four-year tenure on the police jury, he "supervised the maintenance, regular maintenance, of that road[;]" however, his testimony as to the exact maintenance performed and the frequency thereof was sparse at best. Specifically, when asked if he ever did anything besides grading the

6

road, he responded, "That's basically all we did at that time was road machine work. We didn't have no [sic] equipment to do any grass cutting or anything like that at that time." Also, when asked his understanding of "maintaining a road," Stewart responded generally, "Well, what we done then was grade the road and gravel and pull ditches if they needed it." However, he offered no testimony as to how often in his four years as police juror this particular road had been graded. Moreover, when asked specifically if he ever had cleaned up the ditches or added rocks, he answered in the negative, explaining "I don't know if I did" because that would have been handled by the machine operator and road crew.

In addition to testifying that he did not know if ditch work or adding rocks had been performed for the road in question, Stewart also acknowledged that there were no records of maintenance to this particular road, claiming that he had destroyed them about ten years before. Thus, there were no records to indicate the extent or frequency of any work on the road.

Finally, while Gerald Mizell testified that he recalled a road machine coming up and down a portion of the road in the 1970s, and agreed that this had occurred over a period of more than three years when he was a child, he did not testify as to how often he had witnessed this occurring. Moreover, he stated that he and his family had repaired and maintained the road, had run a box over it and later bionic blades, and had trimmed limbs, explaining, "We done it all." Mizell further testified that the previous owner of the property now owned by the Willis brothers had maintained the portion of the road leading to that property. Thus, while the testimony is uncontradicted that a road truck had graded at least a portion of the road in question during the time period of 1976 to 1980, there is simply no evidence of how often this occurred during that four-year time period or of any additional maintenance performed.

7

In Rowe v. Harvey, 307 So. 2d 103 (La. App. 1st Cir. 1974), writ denied, 310 So. 2d 642 (La. 1975), this court was required to determine if a road was public or private, where the road was only graded sporadically and the parish did not lay gravel, trim trees, or perform any other maintenance. This court found that the maintenance was insufficient to constitute a tacit dedication under LSA-R.S. 48:491. Rowe, 307 So. 2d at 107. In Rowe, as in the instant case, at the time the parish performed maintenance, the parish generally worked private roads and driveways as well as public ones. Rowe, 307 So. 2d at 105-06. Conversely, in Himel, 185 So. 3d at 47-48, this court found that a road which was built by the landowners had, in fact, become a public road because the parish sufficiently maintained the road for more than three years after a request from the landowners. In Himel, the parish paved part of the road, set or moved drainage culverts, removed a tree along the road, cut a "cross ditch," and installed signage on the road. Although the parish only paved and maintained part of the road, the entire road was found to be a public road. Himel, 185 So. 3d at 47-48. However, the maintenance detailed in Himel far exceeds the maintenance that occurred in both the instant matter and in Rowe. Instead, the amount of public maintenance performed on the road in this matter is comparable to the maintenance done in Rowe. Thus, considering the precepts in Rowe and Himel, as well as the testimony and evidence submitted herein, and according the appropriate deference to the trial court's factual findings, we cannot conclude that the trial court was manifestly erroneous in finding that the work performed did not constitute sufficient public maintenance to support a tacit dedication of the road pursuant to LSA-R.S. 48:491(B)(1)(a).

Additionally, with regard to the trial court's finding that the Willis brothers had not met their burden of proving that any work done was performed *by the authority of the municipal governing authority*, while Stewart testified that he

supervised the grading of this road, as well as other private roads, during his four-year tenure and that the Parish never told him to stop, he was not asked and did not state that he did so on the authority of the parish governing authority. And while Stewart claimed that he himself had had records of maintenance performed but that he had destroyed them, notably, the testimony of Donnell Merritt, transportation manager for Washington Parish Government, indicates that the Parish had no such records. Rather, when a list of roads maintained by the Parish was first compiled in 1985, this particular road was not included on the list. Based on this testimony, the trial court found that the Willis brothers had failed to meet their burden of proving that any work performed had been done by the authority of the municipal governing authority, finding instead that Merritt's testimony "suggests that any work done was not by the authority of the parish or its municipalities." A police jury can act only as a body and not individually. Wes-T-Erre Development Corporation v. Parish of Terrebonne, 416 So. 2d 209, 217 (La. App. 1st Cir.), writ denied, 421 So. 2d 251 (La. 1982). Thus, an individual member or members of a police jury cannot bind the police jury as the governing body. See Starnes v. Police Jury of Rapides Parish, 27 So. 2d 134, 136 (La. App. 2nd Cir. 1946).

Moreover, where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous. Jones v. Bravata, 2018-0837 (La. App. 1st Cir. 5/9/19), 280 So. 3d 226, 233, writ denied, 2019-01850 (La. 2/26/20), 294 So. 3d 477. Based on our review of the record, we likewise cannot conclude that the trial court's view of the evidence in finding a lack of proof that any work was performed on the authority of the municipal governing body is manifestly erroneous.

Louisiana Revised Statutes 48:491(B)(1)(a) provides that a tacit dedication results when a road has been "kept up, maintained, or worked for a period of three years by the authority of a parish governing authority." The evidence presented

9

herein supports the trial court's factual determinations and ultimate conclusion that the road was not maintained sufficiently to cause a tacit dedication as the work that was done was very minimal, "token maintenance" and that the Willis brothers had not established that any work that may have been performed was performed by the authority of the municipal governing authority. See Guzzardo, 486 So. 2d at 915. As such, we find no manifest error by the trial court.

Accordingly, this assignment of error lacks merit.

### Assignment of Error #2

In their second assignment of error, the Willis brothers contend that the trial court erred in failing to find (or even consider) that they acquired a servitude of passage through acquisitive prescription due to their constant, undisturbed use of the road for over thirty years.[4]

Louisiana Civil Code article 740 provides that "[a]pparent servitudes may be acquired by title, by destination of the owner, or by acquisitive prescription." The laws governing acquisitive prescription of immovable property apply to apparent servitudes. An apparent servitude may be acquired by peaceable and uninterrupted possession of the right for ten years in good faith and by just title; it may also be acquired by uninterrupted possession for thirty years without title or good faith. LSA-C.C. art. 742. Moreover, doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate. LSA-C.C. art. 730.

---

[4]As support, the Willis brothers note that the trial court did not mention this aspect of the case in its reasons for judgment. However, appeals are taken from the actual judgment itself, not the reasons for judgment. Thus, as an appellate court, we review the judgment on appeal, and not the reasons. Dawson v. Terrebonne General Medical Center, 2010-2130 (La. App. 1st Cir. 5/19/11), 69 So. 3d 622, 630. Moreover, we note that the Willis brothers raised the issue of their purported acquisition of a servitude by undisturbed use for years in their reconventional an third party demand, which clearly was rejected, as the judgment on appeal in this matter specifically dismissed the entirety of their reconventional and third party demand against the Mizells and the Blackwells.

10

Louisiana Civil Code article 3437 defines precarious possession as "[t]he exercise of possession over a thing with the permission of or on behalf of the owner or possessor." "Acquisitive prescription does not run in favor of a precarious possessor or his universal successor." LSA-C.C. art. 3477. Excluding a co-owner, any precarious possessor or his universal successor may commence to prescribe when he gives actual notice to the person on whose behalf he is possessing that he intends to possess for himself. LSA-C.C. art. 3478.

To acquire possession, the possessor must intend to possess as owner and must take corporeal possession of the thing. LSA-C.C. art. 3424. The possession must be uninterrupted and free of vices, i.e., continuous, public, peaceable, and unequivocal. LSA-C.C. arts. 3435 and 3476. The possession must be adverse; thus, it must be an unauthorized use that infringes on the ownership of the servient estate. Boudreaux v. Cummings, 2014-1499 (La. 5/5/15), 167 So. 3d 559, 563-64.

As noted by the Supreme Court, as it relates to precarious possession, the concept of implied permission to use one's property is still a viable theory of our civilian law. Even in the absence of express permission, tacit permission can be presumed under the limited circumstances where "indulgence" and acts of "good neighborhood" are present. Accordingly, a neighborly act of tolerance will not serve as the foundation of adverse possession needed for purposes of acquisitive prescription. Boudreaux, 167 So. 3d at 563. Moreover, what constitutes possession in any case depends on the nature of the property and is a question of fact, with each case depending upon its own facts. Alford v. Jarrell, 471 So. 2d 970, 973 (La. App. 1st Cir. 1985).

In their reconventional demand, the Willis brothers aver that they and their lessees have used the road to access their property since their purchase of the property in 1977. Accordingly, they contend they should be restored to possession of their right of passage along the road. On appeal, the Willis brothers aver that

11

"the record in its entirety presents such a compelling picture of adverse possession of an apparent servitude that no other legal conclusion can be drawn other than ownership by the [Willis brothers]." They contend that their use of the road was not merely "neighborly accommodation," and that their acts of possession "are the acts of open and notorious possession requiring affirmative action by the owner of the servient estate to defeat prescription." We disagree.

The record reflects that the Willis brothers asked the Mizells' father, Billy Ray Mizell, who owned the property before his death in 2016, for permission "to do things such as cut tree limbs" if they were growing in the way. Additionally, the Willis brothers constructed an alternate path to the road sometime around 2013, after Billy Ray Mizell requested that they take action to remedy an issue that was arising due to their use of the road. James Willis testified that although Billy Ray Mizell placed a cord across the road in 1996 to stop people from using the road, after they had a discussion with him, Billy Ray did not place a lock on it and allowed the Willis brothers to use the road. However, Gerald Mizell testified that he recalled his dad always giving other people permission to use the road as well, if they requested such use.

In sum, the record reflects that the Mizells, through their ancestor in title, Billy Ray Mizell, gave tacit permission for the Willis brothers and others to use the road. As recognized by the Louisiana Supreme Court in Boudreaux, in order for prescription to accrue, the possessors must possess for themselves, and such possession must be *adverse* and must be an *unauthorized* use that infringes on the ownership of the servient estate. Boudreaux, 167 So. 3d at 563-64. Here, the testimony clearly reflects that the use of the road by the Willis brothers was not "unauthorized" or "notorious" adverse possession. Accordingly, they were precarious possessors for purposes of acquisitive prescription.

12

Thus, unless the Willis brothers ever gave actual notice to the Mizells of their intent to possess the road for themselves, they remained precarious possessors and acquisitive prescription could not run. See LSA-C.C. art. 3478. Apart from the continued use and shared maintenance of the road, there is nothing in the record that indicates actual notice was ever given to the Mizells, or their father, that the Willis brothers intended to change their permissive, neighborly use of the property to open, adverse possession. Moreover, as set forth in LSA-C.C. art. 730, any "doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate." As recognized by the Louisiana Supreme Court, servitudes are not viewed favorably by the law, because they constitute restraints on the free disposal and use of property. See Boudreaux, 167 So. 3d at 564-65, citing Continental Group, Inc. v. Allison, 404 So. 2d 428 (La. 1981). Accordingly, we are unable to find support in the record for the claim of the Willis brothers that their precarious possession was such that acquisitive prescription commenced to run.

This assignment of error also lacks merit.

## CONCLUSION

For the above and foregoing reasons, the trial court's January 16, 2020 judgment in favor of Gerald Wayne Mizell, Pamela Mizell Helton, Charles Guy Blackwell, and Lydia D. Blackwell, dismissing the claims of Bobby Joe Willis and James E. Willis against them, is hereby affirmed. Costs of this appeal are assessed against the defendants, Bobby Joe Willis and James E. Willis.

**AFFIRMED.**

13

GERALD WAYNE MIZELL
AND PAMELA MIZELL HELTON

NUMBER 2020 CA 0915

FIRST CIRCUIT

VERSUS

COURT OF APPEAL

STATE OF LOUISIANA

BOBBY JOE WILLIS AND
JAMES E. WILLIS

---

WELCH, J., concurring in part; dissenting in part.

I concur in the majority's finding that the trial court did not manifestly err in its finding that no servitude of passage was created through acquisitive prescription. However, I dissent regarding the majority's finding that the trial court did not err in finding that the road at issue was not tacitly dedicated as a public road pursuant to La. R.S. 48:491(B)(1)(a).

Louisiana Revised Statutes 48:491(B)(1)(a) is clear that if a public authority "kept up, maintained, or worked" on a road for a period of three years with "actual or constructive knowledge of such work by adjoining landowners," the road shall be public. The trial court found that the work done on the road at issue did not rise to a level of maintenance required under La. R.S. 48:491. However, the record shows—through the uncontroverted, sworn testimony of James Howard Stewart, a former Washington Parish police jury member—that Mr. Stewart supervised the "regular maintenance" of the road at issue from 1976 through 1980. Mr. Stewart testified that the "regular maintenance" performed by the Parish included grading the road, laying gravel on the road, and pulling ditches as needed. Mr. Stewart classified the type of "regular maintenance" the Parish performed on roads as "road machine work" based on the type of equipment available to the Parish during those years.

The majority reasons that because Mr. Stewart could not testify with specificity as to the exact maintenance he performed on the road over forty years ago, and because he no longer has records of the maintenance performed on this and other roads during his tenure as a police juror, his testimony must be considered "sparse at best." However, there is no requirement found in La. R.S. 48:491(B)(1)(a) that a public authority must list specific actions it undertook to keep up, maintain, or work on a road.

The majority further reasons that because neither the Parish nor Mr. Stewart have any records of the maintenance performed on the road at issue, and that the Parish graded all roads—both public and private—that the yearly maintenance performed on this road is insufficient to convert the road to a public road. In fact, the majority places great emphasis on the fact that the Parish graded all roads in Washington Parish. However, La. R.S. 48:491(B)(1)(a) makes no distinction as to how many roads a Parish grades, nor whether such roads are classified as public or private. The pertinent issue under La. R.S. 48:491(B)(1)(a) is whether the Parish "kept up, maintained, or worked" on *this* road.

The uncontroverted testimony of Mr. Stewart was that the Parish graded, laid gravel, and pulled ditches on *this* road for four years. Since the period of work done by the Parish on the road at issue went on for four years, actual or constructive knowledge of such work by the adjoining landowners is statutorily presumed. See La. R.S. 48:491(B)(1)(c). Accordingly, the road at issue must be a public road pursuant to the broad and plain language of La. R.S. 48:491(B)(1)(a).

The majority also finds that there was insufficient evidence to prove that the work performed by Mr. Stewart on the road at issue was actually performed by the public authority. The majority reasons that because Mr. Stewart was not asked during trial and did not affirmatively state that he performed regular maintenance on the road on behalf of the Washington Parish Policy Jury, he *must* have acted

2

individually. The record contains no reasonable factual basis to support the majority's conclusion.

The majority cites **Wes-T-Erre Dev. Corp. v. Terrebonne Par., Through Police Jury of Terrebonne Par.**, 416 So. 2d 209 (La. App. 1st Cir.), <u>writ denied</u>, 421 So. 2d 251 (La. 1982) and **Starnes v. Police Jury of Rapides Par.**, 27 So. 2d 134, 135 (La. App. 2nd Cir. 1946). The **Wes-T-Erre Dev. Corp.** case involved an alleged "deal" between the plaintiff and two police jury members. <u>See</u> **Wes-T-Erre Dev. Corp.**, 416 So. 2d at 211-14. The plaintiff was a shopping center owner who wanted to construct a driveway connecting his shopping center to a parish road. **Id.** at 211-12. Two police jury members made "representations" to the plaintiff as to whether they would vote to support or oppose the construction of the plaintiff's requested driveway during police jury meetings. **Id.** at 217. As to the actions of the two police jury members, the **Wes-T-Erre Dev. Corp.** court held that "a police juror acting alone or in unison with another member or members, without a proper meeting, cannot obligate a political body to an affirmative or binding course of action." **Id.** at 217.

The **Starnes** case involved the construction of a new road after an old road became unsafe and the question of one police juror's authority to abandon the old road located in his ward. <u>See</u> **Starnes**, 27 So. 2d at 135. There was no ordinance authorizing the "change of roads," nor any action by the police jury regarding the establishment of a new road. **Id.** at 136. The Starnes court held that the abandonment could only be effected by a formal act of abandonment or by clear and well-established proof of an intent on the part of the governing body to abandon. **Id.**

Neither the **Wes-T-Erre Dev. Corp.** case nor the **Starnes** case are applicable here and are distinguishable from the case before this court. Neither case involved the tacit dedication of a public road pursuant to La. R.S. 48:491(B)(1)(a)—the **Wes-T-Erre Dev. Corp.** case resolved the binding effect of representations by two police

jurors to a member of the public regarding the construction of a driveway, and the **Starnes** case resolved whether one police juror could unilaterally abandon a public road. Neither case offers guidance in the instant matter.

Regardless of the existence or non-existence of public road maintenance records regarding this road, such public records are only required to be retained for a period of three years. See La. R.S. 44:36(A) and (B) (These records would be about forty years old.). Mr. Stewart—a former Washington Parish police jury member who supervised road maintenance—testified without contradiction that he "kept up, maintained, or worked" on this private road by pulling ditches, laying gravel as needed, and grading the road from 1976-1980. Importantly, Mr. Stewart testified that he maintained the private gravel roads just the same as he maintained the public gravel roads. Based upon the record before us, it is inconceivable that the trial court could not find that the work done to this road by the Parish did not rise to the requisite level of maintenance to trigger La. R.S. 48:491(B)(1)(a), when the public and private gravel roads in Washington Parish in 1976-1980 were "kept up, maintained, or worked" the same. This is a public road.

For the foregoing reasons, I believe that the majority erred in finding that the road at issue was not a public road pursuant to La. R.S. 48:491(B)(1)(a). I respectfully dissent.

4

GERALD WAYNE MIZELL
AND PAMELA MIZELL HELTON

VERSUS

BOBBY JOE WILLIS
AND JAMES E. WILLIS

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2020 CA 0915

CHUTZ, J., concurring in part and dissenting in part.

For the reasons stated by Judge Welch, I concur in the majority's conclusion insofar as the Willis Brothers' claim of having acquired a servitude of passage through acquisitive prescription. I also fully agree with Judge Welch on the issue of whether the road was tacitly dedicated as a public road under La. R.S. 48:491B(1)(a).

I write separately to point out that in the 1960s, construction of an unimproved rural gravel road consisted of pulling the ditches, grading the surface of the roadway, and adding gravel. Logically, it follows that "maintenance" would have been something less than that required for the original construction of the road. Thus, the trial court's conclusion is manifestly erroneous for failing to consider the uncontroverted testimony of Washington Parish Police Juror, James Howard Stewart, as to the regular use of the road machine between 1976 and 1980 on the subject road as sufficient keeping up, maintaining, or working of the road so as to constitute a tacit dedication under La. R.S. 48:491B(1)(a).